# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-1765-EWN-BNB

WEST COAST LIFE INSURANCE COMPANY, a Nebraska corporation,

 Plaintiff,

vs.

MARTHA HOAR, as the personal representative of THE ESTATE OF STEPHEN M. BUTTS,
TELLURIDE PROPERTIES, LLC, a Colorado limited liability company,
TELLURIDE PROPERTIES, INC., a Colorado corporation,
ALBERT D. ROER, an individual, and
POLLY LYCHEE, an individual,

 Defendants.

---

## DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

---

 Defendants, Martha Hoar, as the Personal Representative of the Estate of Stephen M. Butts, Telluride Properties, LLC, Telluride Properties, Inc., Albert D. Roer, and Polly Lychee, by and through their undersigned counsel, hereby submit this Memorandum Brief in Support of Motion for Partial Summary Judgment on Plaintiff West Coast Life Insurance Company's ("West Coast") claims for rescission (First Claim for Relief in Complaint) and declaratory judgment (Second Claim for Relief of the Complaint) and Defendants' claim for breach of insurance contract (First Claim for Relief in Defendants' Counterclaim).  In support thereof, Defendants state as follows:

1284375_1.doc

## I.    STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.    <u>The Application</u>.**

1.    On or about October 1, 2005, Stephen M. Butts signed an application for life insurance with West Coast (the "Application").  Complaint, September 12, 2005, at ¶ 13 and the Application attached as Exhibit A to the Complaint; *see als*o **Exhibit A-1** hereto, the Application (filed under seal).

2.    Section IV, Question Number 5 of the Application ("Question 5") asked Mr. Butts if he "[e]ngaged in auto, motorcycle or boat racing, parachuting, skin or scuba diving, skydiving, or hang gliding or other hazardous avocation or hobby."  *Id.* at ¶ 14; **Exhibit A-1.**

3.    Mr. Butts answered Question 5 in the negative.  *Id.* at ¶ 15; **Exhibit A-1**.

4.    A section at the end of the Application entitled "Declarations" states that by signing the Application, Mr. Butts "represent[ed] that all statements and answers made in all parts of this application are full, complete and true to the best of my knowledge and belief."  *Id.* at ¶ 12; **Exhibits A-1 and A-2** (filed under seal).[1]

5.    Mr. Butts did not believe that heli-skiing was hazardous.  **Exhibit A-3,** excerpts from Heidi Winslow's deposition transcript at page 81, line 24 – page 82, line 17;[2] **Exhibit A-4**, Roer Deposition at 128:5 – 129:9.

6.    Mr. Butts considered heli-skiing very safe.  **Exhibit A-3**, Winslow Deposition at 81:24 – 82:17.

---

[1]  Attached as **Exhibit A-2** is a more legible copy of the Declarations section of the Application (filed under seal).

[2]  Hereinafter, deposition transcripts such as this will be cited as "Winslow Deposition at 81:24 – 82:17."

7.    Steven Hetherington is the Chief Underwriter for West Coast and has his office in San Francisco, California.  **Exhibit A-5**, Hetherington Deposition at 6:15 – 18; 60:16 – 61:2.

8.    Mr. Hetherington could not identify any reason why West Coast could not add heli-skiing to the list of activities listed in Question 5.  *Id.* at 161:16-23.

9.    Mr. Hetherington has never seen a West Coast life insurance application that defines "other hazardous avocation or hobby" within the meaning of Question 5.  *Id.* at 43:9-20.

10.    Mr. Hetherington has never seen a definition of "other hazardous avocation or hobby" that has been provided by West Coast to any applicant or agent.  *Id.* at 43:21 – 44:5.

11.    Mr. Hetherington could not identify any reason why West Coast could not provide the applicant or the agent with a list of the activities that West Coast considered to be "other hazardous activity or avocation" within the meaning of Question 5 to be used in completing the Application.  *Id.* at 44:2-5; 45:22 – 46:9.

**B.    Underwriting by West Coast.**

12.    Mark Youngquist is an underwriter at West Coast's office in Omaha, Nebraska. **Exhibit A-6**, Youngquist Deposition at 11:7-18; 28:11-25.

13.    Mr. Youngquist had worked as an underwriter since 1995 for other insurance companies before he began his employment with West Coast in October 2004.  *Id.* at 18:2-11**.**

14.    Mr. Youngquist reviewed and evaluated Mr. Butts' application.  *Id.* at 11:7 – 18; 45:5 – 47:21; **Exhibit A-7**, Underwriting Worksheet.

15.    Mr. Youngquist approved Mr. Butts' application on November 1, 2004**. Exhibit A-6**, Youngquist Deposition at 45:5 – 47:21; 65:15 – 66:6; **Exhibit A-7**, Underwriting Worksheet at 4**; Exhibit A-8**, Underwriting Final Action Printout.

16.    West Coast issued Policy Number Z03040759 insuring the life of Stephen M. Butts with a policy date of November 5, 2004 (the "Policy").  Complaint, September 12, 2005, at ¶ 16 and Exhibit B to the Complaint at 3; *see* **Exhibit A-7,** Underwriting Worksheet at 4**.**

17.    Mr. Youngquist had been employed at West Coast for less than a month when he approved Mr. Butts' life insurance application.  **Exhibit A-6**, Youngquist Deposition at 11:7-18; **Exhibit A-7,** Underwriting Worksheet**; Exhibit A-8**, Underwriting Final Action Printout**.**

18.    Prior to issuing the life insurance policy, West Coast hired First Financial Underwriting Services, Inc. ("First Financial") to interview Mr. Butts and provide a written report of that interview.  **Exhibit A-9**, Chu Deposition at 18:3 – 19:2; **Exhibit A-10**, First Financial Service Order Form; **Exhibit A-6**, Youngquist Deposition at 76:25 – 77:7.

19.    On October 12, 2004, Alex Chu of First Financial interviewed Mr. Butts and prepared notes of his interview ("Interview Notes").  **Exhibit A-9**, Chu Deposition at 51:13-21; 21:24 – 22:7; **Exhibit A-11**, Mr. Chu's Interview Notes.

20.    Mr. Chu's Interview Notes state, "Any other recreational activities or exercise in your spare time?  Skiing, golfing."  **Exhibit A-9**, Chu Deposition at 24:21 – 25-8; **Exhibit A-11**, Mr. Chu's Interview Notes at 2.

21.    Based on his Interview Notes, Mr. Chu prepared a narrative report called a Life Inspection – 5 Year Report ("Life Inspection Report") and submitted the Life Inspection Report to West Coast.  **Exhibit A-9**, Chu Deposition at 39:12 – 22; **Exhibit A-12,** First Financial Life Inspection Report.

22.    Prior to issuing the policy, West Coast received the Life Inspection Report from First Financial.  **Exhibit A-12**, Life Inspection Report; **Exhibit A-13**, Response to Interrogatory

No. 1 in Plaintiff's Responses to Defendants' Second Set of Interrogatories, Requests for Production, and Requests for Admission.

23.     Mr. Youngquist reviewed the Life Inspection Report on or about October 26, 2004, which was prior to his approving Mr. Butts' application on November 1, 2004.  **Exhibit A-6**, Youngquist Deposition at 54:20 – 55:13.

24.     The Life Inspection Report states on page 3 that, "He [Mr. Butts] also enjoys skiing and golfing in his spare time."  **Exhibit A-12**, First Financial Life Inspection Report; **Exhibit A-9,** Chu Deposition at 39:12 – 22.

25.     Mr. Youngquist interpreted the term "skiing" used in the Life Inspection Report to mean pleasure skiing at a ski resort. **Exhibit A-6**, Youngquist Deposition at 57:8 – 58:11.

26.     Prior to issuing the life insurance policy, West Coast did not know whether or not Mr. Butts included or excluded heli-skiing when he used the term "skiing" in his interview with Mr. Chu.  **Exhibit A-6**, Youngquist Deposition at 58:12 – 19; **Exhibit A-5**, Hetherington Deposition at 76:22 - 78:8.

27.     Prior to issuing the life insurance policy, West Coast could have asked Mr. Butts about the nature or type of his skiing activity by contacting him through First Financial or the agent who took the Application.  **Exhibit A-6**, Youngquist Deposition at 61:13 – 62:12; **Exhibit A-9**, Chu Deposition at 50:8 – 18; 51:22 – 53:7; **Exhibit A-10**, First Financial Service Order Form.

28.     West Coast made no inquiry into the nature or type of Mr. Butts' skiing activity prior to issuing the policy.  **Exhibit A-6**, Youngquist Deposition at 57:25 – 58:4; 60:17-21.

29.    West Coast uses the Swiss Re Underwriting Manual in underwriting applications for life insurance.  *Id*. at 24: 21 – 25:2.

30.    Mr. Youngquist has never received any training in underwriting from West Coast, and prior to approving Mr. Butts' application, he had never used the Swiss Re Underwriting Manual to underwrite an application for life insurance.  *Id*. at 24:13-16; 27:1 – 11.

31.    The Winter Sports Life Ratings section of the Swiss Re Underwriting Manual contains six different types of skiing activities, including heli-skiing, under the heading of "Skiing."  **Exhibit A**-**14**, Winter Sports Life Ratings (filed under seal).

32.    Under the Winter Sports Life Ratings section of the Swiss Re Underwriting Manual, the type of skiing engaged in by an applicant may affect the amount of a policy's premium.  **Exhibit A**-**14**, Winter Sports Life Ratings (filed under seal); **Exhibit A-6**, Youngquist Deposition at 24:21 – 25:2, 38:10 -41:19.

33.    Prior to approving Mr. Butts' application, Mr. Youngquist had never seen the Winter Sports Life Ratings section of the Swiss Re manual.   **Exhibit A-6**, Youngquist Deposition at 37:17 – 38:9.

34.    Prior to approving Mr. Butts' application, Mr. Youngquist did not consult the Winter Sports Life Ratings section of the Swiss Re Underwriting Manual regarding "Skiing" as part of his review and evaluation of Mr. Butts' application.  *Id.* at 27:21-24.

35.    Prior to issuing the life insurance policy, West Coast did not know whether or not Mr. Butts believed that heli-skiing was hazardous.  *Id.* at 92:2-6; **Exhibit A-5**, Hetherington Deposition at 152:7-18.

36.    No information is provided by West Coast to the First Financial interviewer who is going to prepare the Life Inspection Report, in this case Alex Chu, that defines "other hazardous avocation or hobby" with respect to Question 5.  **Exhibit A-6**, Youngquist Deposition at 68:17 – 69:8; **Exhibit A-5**, Hetherington Deposition at 43:21 – 44:5; **Exhibit A-15**, Reed Deposition at 71:13 – 72-23.

37.    Mr. Youngquist could not identify any reason why West Coast could not have added heli-skiing to the list of activities listed in Question 5.  **Exhibit A-6**, Youngquist Deposition at 74:6-10.

38.    Mr. Youngquist has never seen a West Coast life insurance application that defines "other hazardous avocation or hobby" within the meaning of Question 5.  *Id.* at 68:12-16.

39.    Mr. Youngquist has never seen a definition of "other hazardous avocation or hobby" that has been provided by West Coast to any applicant or agent.  *Id.* at 68:17 – 69:1.

40.    Mr. Youngquist could not identify any reason why West Coast could not provide the applicant, the agent, or the interviewer who is going to prepare the Life Inspection Report with a list of the activities that West Coast considered to be "other hazardous activity or avocation" within the meaning of Question 5.  *Id.* at 74:11 – 75:24.

41.    West Coast evaluated Mr. Butts' responses to the questions on the application as if he were a reasonable or average person and answered the questions objectively.  **Exhibit A-6**, Youngquist Deposition at 80:10-20; **Exhibit A-16**, e-mail from Marilyn Reed; **Exhibit A-15**, Reed Deposition at 44:6 – 47:1.

42.    If West Coast had known that Mr. Butts heli-skied while reviewing and evaluating his application, West Coast still would have issued a life insurance policy insuring

Mr. Butts' life, but with an increased premium.  **Exhibit A-6**, Youngquist Deposition at 42:15-21; 73:8-15; **Exhibit A-5**, Hetherington Deposition at 137:14 – 138:7; 146:2-16; **Exhibit A-17**, e-mail from Steve Hetherington at 3.

**C.**    **Denial of Claim by West Coast.**

43.    Mr. Butts died on January 18, 2005 in an avalanche while heli-skiing in British Columbia, Canada.  Complaint, September 12, 2005, at ¶ 19.

44.    West Coast received timely notice of the claim.  Complaint, September 12, 2005, at ¶ 20.

45.    West Coast's Contestable Claims Committee ("Claims Committee") reviewed and evaluated the Butts' death claim.  **Exhibit A-18**, Carroll Deposition at 18:23 – 29:4; **Exhibit A-19**, Rucks Deposition at 26:24 – 27:3.

46.    The members of the Claims Committee in 2005 were Arthur Tyson, Gary Carroll, Bridgett Rucks, and Tracy DeFoor.  **Exhibit A-19**, Rucks Deposition at 26:7-10; **Exhibit A-18**, Carroll Deposition at 18:23 – 19:17; **Exhibit A-20**, DeFoor Deposition at 46:8-12.

47.    Gary Carroll was chairman the Claims Committee.  **Exhibit A-18**, Carroll Deposition at 17:6-12; 53:10-15.

48.    The Claims Committee voted unanimously on July 26, 2005 to deny the Butts' death claim.  **Exhibit A-21,** Contestable Claim Worksheet at page 2**; Exhibit A-22**, Tyson Deposition at 11:6-12; 135:18 – 136:5; **Exhibit A-18**, Carroll Deposition at 47:13-19; **Exhibit A-19**, Rucks Deposition at 81:22 – 83:7.

49.   West Coast sent Telluride Properties, LLC a letter dated July 27, 2005 informing it that West Coast had denied the Butts' death claim.  **Exhibit A-23**, West Coast Life Denial of Claims Letter; **Exhibit A-22**, Tyson Deposition at 135:18 – 136:14**.**

50.   West Coast's sole reason for denying the claim was Mr. Butts' failure to disclose heli-skiing in response to Question 5.  **Exhibit A-23** West Coast Life Denial of Claims Letter; **Exhibit A-22**, Tyson Deposition at 152:23 – 153:10; **Exhibit A-19**, Rucks Deposition at 84:1-12; **Exhibit A-20**, DeFoor Deposition at 130:12 - 131:20.

51.   West Coast does not have a definition of "hazardous avocation or hobby" with respect to Question 5.  **Exhibit A-18**, Carroll Deposition at 100:18 – 101:3; **Exhibit A-19**, Rucks Deposition at 40:6-11;  **Exhibit A-6**, Youngquist Deposition at 82:19 – 83:7.

52.   In determining whether to deny the claim, the Claims Committee looked at what a reasonable, average person would consider hazardous and not what Mr. Butts considered hazardous.  **Exhibit A-19**, Rucks Deposition at 43:18 – 44:2; 48:7-10.

53.   The Claims Committee did not consider that Mr. Butts' was an expert skier or that he had heli-skied five or six times without incident.  **Exhibit A-19**, Rucks Deposition at 47:3-16.

54.   The Claims Committee did not consider whether or not Mr. Butts believed heli-skiing was a hazardous avocation or hobby.  *Id*. at 86:18 – 87:1.

55.   At the time the Butts' claim was denied, West Coast did not know whether or not Mr. Butts believed that heli-skiing was hazardous.  *Id.* at 86:7-11; **Exhibit A-22**, Tyson Deposition at 74:23 – 75:12; **Exhibit A-18**, Carroll Deposition at 86:15 – 87:3; **Exhibit A-19**, Rucks Deposition at 43:10 – 44:2.

56.     At the time the claim was denied, West Coast had a statement from Albert Roer that Mr. Butts did not consider heli-skiing hazardous.  **Exhibit A-24**, International Claim Specialist Report dated April 29, 2005 at 4.

57.     At the time the claim was denied, West Coast had received a report of an interview of Steve Cieciuch, a long-time friend of Mr. Butts who had gone on several heli-skiing trips with Mr. Butts.  *Id*. at 2.

58.     Mr. Cieciuch told the interviewer that he did not consider heli-skiing to be hazardous.  *Id*.

## II.     SUMMARY OF ARGUMENT

West Coast is not entitled to rescission, as a matter of law, because under well-settled, Colorado case law, West Coast cannot demonstrate three of the following factors, all of which must be established for an insurer to rescind an insurance policy:

> (1) the applicant made a false statement of fact or concealed a fact in his application for insurance; (2) the applicant knowingly made the false statement or knowingly concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer; (4) the insurer was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowledge of the fact; (5) the insurer relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy.

*Hollinger v. Mutual Benefit Life Ins. Co.*, 560 P.2d 824, 827 (Colo. 1977); *see also* C.R.S. § 10-16-209(3).  Specifically, West Coast cannot satisfy requirements 1, 2, and 4 of the *Hollinger* test. West Coast cannot establish that Mr. Butts **knowingly** made a false statement of **fact** or concealed a fact.  Nor can West Coast prove that it was ignorant of the alleged false statement of fact or concealment of fact or that it is not **chargeable with knowledge of the fact**.

West Coast's life insurance application asks applicants if they "engage in auto, motorcycle, or boat racing, parachuting, skin or scuba diving, skydiving, or hang gliding or <u>other hazardous avocation or hobby</u>." (emphasis added).  **Exhibit A-1**, the Application (Section IV, Question Number 5).  Additionally, applicants are required to declare and verify that they have answered the questions on the application "to the best of their knowledge and belief."  *Id*. (*See* Declarations Section).  As a matter of law, West Coast's question to Mr. Butts regarding "other hazardous avocation or hobby" is ambiguous and subjective.  Consequently, the answer Mr. Butts gave to this question was his **opinion** and did not constitute a statement of f**act**.  Moreover, Mr. Butts correctly stated his true belief in responding to this question.  Hence, Mr. Butts did not make a knowing false statement of fact.

Also, West Coast was not "ignorant" of the alleged false statement (or concealment) and is "chargeable" with knowledge that Mr. Butts helicopter skied ("heli-skied").  Before the Application was approved and the Policy issued, Mr. Butts disclosed to West Coast Life that he "skied."  However, West Coast did not ask Mr. Butts for any information about what type of skiing he did, even though it was able and permitted to do so and the underwriting manual that West Coast used listed six (6) different premium categories under the heading of "Skiing."

Consequently, West Coast is not entitled, as a matter of law, to rescind the Policy, and its First Claim for Relief for rescission as well as its Second Claim for Relief seeking declaratory

judgment should be dismissed.[3]  Because West Coast is not entitled to rescind the life insurance

policy, West Coast has breached its contract of insurance by denying Defendants' claim for

benefits.  Therefore, Defendants are entitled to the entry of summary judgment in their favor, as

a matter of law, on their breach of insurance contract counterclaim (First Claim for Relief in

Defendants' Counterclaim).

## III.     ARGUMENT

**A.     West Coast Cannot Establish that Mr. Butts Made a False Statement of Fact or Concealed a Fact in Responding to Question 5 of the Application.**

1.     Question 5 is Ambiguous and Should Be Construed against West Coast.

Question 5 is ambiguous because the term "other hazardous avocation or hobby" is

undefined.  Question 5 asked Mr. Butts, in part, if he "[e]ngaged in … other hazardous avocation

---

[3] The evidence is undisputed that if Mr. Butts had answered Question 5 "yes" and disclosed that he heli-skied, West Coast still would have accepted his application and issued a policy, but it would have charged an additional premium of $7,500.00 per year.  **Exhibit A-6**, Youngquist Deposition at 72:23 – 73:15; **Exhibit A-5**, Hetherington Deposition at 83:17 – page 84:18; 136:1 – 138:3; **Exhibit A-17** at 3; **Exhibit A-14**, Winter Sports Life Ratings.  Thus, West Coast did not rely to its detriment on the alleged false statement of fact or concealment of fact "in issuing the policy" – the fifth prong of the *Hollinger* test – because it would have issued the policy anyhow. *Nationwide Mut. Ins. Co. v. Mrs. Condies Salad Co., Inc.*, ___ P.3d ___, 2006 WL 560955 (Colo. App. 2006) ("Materiality is established if a false or concealed fact materially affected either the risk accepted or the hazard insured against such that the insurer would not have included the coverage provision had it been truthfully informed.").  Thus, West Coast's acceptance of the risk or hazard assumed was not materially affected by Mr. Butts' response to Question 5.  Defendants have not been able to locate any Colorado precedent that holds that a mere increase in premium is a sufficient basis for rescission, especially in the context of this case where the question is ambiguous, subjective, and answered to the best of the applicant's knowledge and belief.  Defendants submit that the fifth prong of the *Hollinger* test requires that West Coast prove that the application would have been denied entirely, not merely rated with a higher premium, to justify rescission.  Otherwise, the fifth prong of the *Hollinger* test would be redundant and superfluous of the third prong's requirement that the false statement of fact or the concealed fact materially affect either the acceptance of the risk or the hazard assumed by the insurer.  This analysis provides additional bases for dismissing West Coast's rescission and declaratory judgment claims.

or hobby."  Undisputed Fact Number 2; **Exhibit A-1**.  Whether a term is ambiguous is a question of law.  *American Mfrs. Mut. Ins. Co. v. SECO/Warwick Corp.*, 266 F. Supp. 2d 1259, 1265 (D. Colo. 2003).  A term is ambiguous if it is susceptible to different meanings.  *Id.*  Here, the term "other hazardous avocation or hobby" is ambiguous since it is unclear whether the term includes or excludes heli-skiing.  *Compare* Undisputed Fact Numbers 5, 6, 26, 56, and 58 with Undisputed Fact Numbers 25, 41, and 52.  West Coast made no attempt to define the term "hazardous" for Mr. Butts, the individual who interviewed Mr. Butts (Alex Chu) or any of West Coast's agents.  *See* Undisputed Fact Numbers 10, 11, 36, and 39.  Additionally, West Coast does not have a life insurance application that defines "hazardous."  Undisputed Fact Numbers 8, 9, 10, 38, and 51.  Even the apparently simple term "skiing" is ambiguous and requires interpretation and explanation because the underwriting manual used by West Coast divides "skiing" into six different categories of activity, each of which is considered distinct for purposes of underwriting and premium pricing.  Undisputed Fact Number s 29, 31, and 32.

Colorado law is well-settled that any ambiguity in an insurance policy is strictly construed against the insurer and in favor of the policyholder and coverage.  *Village Homes of Colo., Inc. v. Travelers Cas. and Sur. Co. and Travelers Cas. Co. of Connecticut*, No. 04CA1396; (Colo. App. June 15, 2006) at 5; *Allstate Ins. Co. v. Avis Rent-A-Car Sys. Inc.,* 947 P.2d 341 (Colo. 1997); *United States Fid. & Guar. Co. v. Budget Rent-A-Car Sys.*, 842 P.2d 208, 211 (Colo. 1992); *American Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991); *American Mfrs. Mutual Ins. Co.* at 1265. Similarly, ambiguous answers in an insurance application are to be construed against the insurer and in favor of the insured.  *Murray v. Montgomery Ward Life Ins. Co.*, 563 P.2d 20, 22 (Colo. App. 1977), *aff'd,* 196 Colo. 225, 584

P.2d 78 (Colo. 1978).  Here, the ambiguous question in the Application should be construed against West Coast because, by the terms of the policy, the Application became part of the insurance contract between the parties.  **Exhibit A-1**; Exhibit B to the Complaint at 7.  ("The policy and the attached copy of the Application, including any supplements or amendments to the Application, constituted the entire life insurance contract.").

West Coast cannot rely on the catch-all phrase "or other hazardous avocation or hobby" in Question 5 to deny the Butts death benefit claim.  *See* **Exhibit A-1**, the Application attached as part of the policy.  Exhibit B to the Complaint.  As Justice Erickson observed in his special concurrence in *Hollinger:*

> However, the distinction which is necessary is that between Materiality (that which affects the insurer's risk) and What a question means. Materiality is to be judged by the insurer; however, the insurer is not at liberty to deny coverage, after a loss has occurred, on the basis of an answer to an insurer's question that is ambiguous or too general to evoke a material response.  For example, a question that calls for the applicant to state whether he has suffered from a number of enumerated maladies, followed by the general catch-all phrase, "or other disease or ailment or surgical operation," is overly broad.  It is so broad as to deny an applicant the opportunity, as a reasonable person, to determine the scope of the question.
>
> We applied this distinction in the companion case, *Wade v. Olinger Life Insurance Co.*, Colo., 560 P.2d 446 (1977).  There, we formulated a rule whereby an applicant's response to an ambiguous or overly broad question was to be measured by an objective standard: whether a reasonable person, with the applicant's physical or mental characteristics, <u>under all the circumstances</u>, would understand that the question calls for disclosure of specific information.  The prophylactic rule announced in the Wade case is consistent with the opinion in this case.

*Hollinger* at 381-82 (emphasis added) (Justices Hodges, Groves, Lee, and Carrigan joined in the special concurrence).  The phrase "a reasonable person … under all the circumstances" required West Coast to consider Butts' subjective state of mind and belief, including his expertise as a

skier and his prior uneventful experiences heli-skiing, in assessing whether Mr. Butts would understand that heli-skiing was a "hazardous activity within the meaning of Question 5 and must be disclosed. West Coast has refused to consider Mr. Butts' knowledge and belief and has resorted to a totally a standard that does not recognize Mr. Butts' opinion and subjective belief and utilizes the beliefs of the average person, including those totally unfamiliar with heli-skiing.

Question 5 asked Mr. Butts if he "[e]ngaged in auto, motorcycle or boat racing, parachuting, skin or scuba diving, skydiving, or hang gliding or other hazardous avocation or hobby." **Exhibit A-1**. This question is overly broad since no reasonable person with Mr. Butts' background and experience could have determined the scope of this question. *Hollinger* at 381-2. For this reason, West Coast cannot now rely on Mr. Butts' answer to Question 5 to rescind the policy or support its declaratory judgment claim. Since Colorado law mandates that the term "hazardous" be interpreted in favor of coverage, the entry of summary judgment in Defendants' favor is proper.

2.    Question 5 Sought a Subjective Answer from Mr. Butts, and his Answer Cannot be a False Statement of Fact or Support a Claim for Rescission.

West Coast's question to Mr. Butts regarding any "other hazardous avocation or hobby" seeks a subjective answer because Mr. Butts was asked to complete the Application "to the best of [his] knowledge and belief." Two parts of the Application are important to this analysis. First, Question 5 asks whether Mr. Butts "[e]ngaged in auto, motorcycle or boat racing, parachuting, skin or scuba diving, skydiving, or hang gliding or other hazardous avocation or hobby." **Exhibit A-1**. However, as noted in the previous section, this question is ambiguous as a matter of law. West Coast provided no definition of "other hazardous avocation or hobby" in the Application. Nor does West Coast provide a definition to applicants, interviewers, or agents.

1284375_1.doc                                     15

*See* Undisputed Fact Numbers 8, 9, 10, 11, 36, 38, 39, and 51. Secondly, at the end of the Application, a section above the signature line entitled "Declarations" states that by signing the Application, Mr. Butts "represent[ed] that all statements and answers made in all parts of this application are full, complete and true <u>to the best of my knowledge and belief</u>." **Exhibit A-1** and **Exhibit A-2** (emphasis added).

By combining the Declaration with Question 5, West Coast essentially was asking Mr. Butts if he knew and believed that he engaged in a hazardous avocation or hobby in addition to those listed in Question 5. As a matter of law, an answer to an insurance application question which solicits a subjective answer cannot be a misrepresentation of <u>fact</u>. *Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1335 (11th Cir. 1995) ("…[I]n order for an insurer to rescind a policy due to a misstatement in the insured's application, such misrepresentation or nondisclosure must be in response to an insurer's request for that information. Where an insurer only requests the disclosure of information to the best of the insured's 'knowledge and belief,' and where the applicant so complies, we decline to protect the insurer from a risk it assumed by virtue of the contractual language it drafted."). (Internal citations and quotations omitted).

West Coast could have drafted an application that asked objective questions regarding specific activities West Coast considered hazardous. For example, the Application did not specifically ask Mr. Butts if he heli-skied. **Exhibit A-1**; Undisputed Fact Numbers 9 and 11. West Coast failed to list heli-skiing as a hazardous avocation or hobby in Question 5. **Exhibit A-1;** Undisputed Fact Numbers 1, 2, 9, 11, and 37. West Coast didn't define "other hazardous avocation or hobby" and does not even have a life insurance application that defines this term. Undisputed Fact Numbers 9, 10, and 51. West Coast did not provide Mr. Butts or the agent who

took the Application with a list of activities that West Coast considered to be "other hazardous avocation or hobby" within the meaning of Question 5 to be used in completing the Application. Undisputed Fact Numbers 11 and 40. West Coast did not provide the First Financial interviewer, Alex Chu, with a definition of "other hazardous avocation or hobby" to assist him in interviewing Mr. Butts and preparing the Life Inspection Report. Undisputed Fact Number 36. Additionally, West Coast also could have excluded the "knowledge and belief" standard from the Application.

West Coast's failure to take any of these steps during the application and underwriting process equitably estops West Coast from seeking to rescind the policy based upon a response to an ambiguous and subjective question that it drafted and chose to use in the Application. As the Eleventh Circuit noted in *William Penn Life Ins. Co. of New York v. Sands*, 912 F.2d 1359, 1364 n.7 (11th Cir. 1990):

> Had Penn Life intended to retain the ability to void the contract based on any inaccuracy, it should not have used the "knowledge and belief" qualifying language. Such language would reasonably induce an insurance applicant to believe that they were covered if they answered the question to the best of their knowledge and belief and the insurer subsequently issued the policy. To permit an insurer to rescind a policy containing the "knowledge and belief" language due to an unknowing misstatement not only contravenes the terms of the contract itself but is unfair as well.

*See also Hauser* at 1334-35; *Green v. Life & Health of Am.*, 704 So.2d 1386, 1391-92 (Fla. 1998).

**B.      Mr. Butts Did Not Knowingly Make a False Statement of Fact or Conceal a Fact.**

In order for West Coast to rescind the policy and obtain a declaratory judgment, West Coast must also prove that Mr. Butts **knowingly** made a false statement of fact or concealed a fact by not disclosing that he heli-skied. *See Hollinger* at 827. By answering Question 5 in the

1284375_1.doc                                    17

negative and signing the Application, Mr. Butts represented that to the best of his knowledge and belief, he did not engage in any "other hazardous avocation or hobby." Mr. Butts was expressing his knowledge and belief that heli-skiing was not a hazardous avocation or hobby within the meaning of Question 5. Mr. Butts' response to Question 5 was his **opinion** and not a representation of a **fact**. Thus, Mr. Butts' omission of heli-skiing in replying to Question 5 is insufficient, as a matter of law, to support West Coast's claims for rescission and declaratory judgment; therefore, summary judgment on these claims should be granted in favor of Defendants.

Courts have noted that claims seeking to rescind an insurance policy for material misrepresentation in an application are divided into two categories: legal fraud and equitable fraud. *Liebling v. Garden State Indem.*, 337 N.J. Super. 447, 454, 767 A.2d 515, 518 (N.J. Super. 2001). Legal fraud, such as the test set out in *Hollinger*, requires proof that the false statement was made with knowledge that it was false. Equitable fraud, on the other hand, does not require proof of knowledge of the falsity of the statement; even an innocent misrepresentation can justify rescission. *Id.*; *Ledley v. William Penn Life Ins. Co.*, 138 N.J. 627, 635, 651 A.2d 92 (1995).

However, even in applying the lesser standard of unknowing false statements of fact in equitable fraud cases, courts have distinguished between objective questions, the answers to which are within the applicant's knowledge, and subjective questions that "seek to probe an applicant's state of mind." *Fidelity & Deposit Co. of Maryland v. Hudson United Bank*, 653 F.2d 766, 771-72 (3d Cir. 1981). If a question is subjective, courts have held that if a negative answer is a correct statement of the applicant's knowledge and belief, it is not a misrepresentation and

does not constitute equitable fraud. In other words, when a question is subjective, as Question 5 is here, fraud is present only if the applicant made the false statement knowing it was false at the time he made it. *Id.*; *see also Ettelson v. Metropolitan Life Ins. Co*, 164 F.2d 660, 665; *Formosa v. Equitable Life Assurance Soc'y*, 166 N.J. Super. 8, 398 A.2d 1301, 1305 (App. Div. 1979); *Williams v. Union Fid. Life Ins. Co.*, 329 Mont. 158, 123 P.3d 213, 222 (2005*)* (statements on an application should be judged based upon the applicant's subjective knowledge, i.e., what he knew and what he believed); *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1088 (1st Cir. 1990) (an applicant's statements must be analyzed from the perspective of a reasonable person in the shoes of the applicant and having a background and characteristics similar to the applicant); *Liebling* at 518-19, *citing Ledley* at 635-637. ("The rationale behind the distinction between objective and subjective questions is that the answer to subjective questions will not constitute equitable fraud if the question is directed toward probing the knowledge of the applicant and determining the state of his mind and … the answer is a correct statement of the applicant's knowledge and belief.").

*Hollinger* adopts the legal fraud requirement of a knowing false statement of fact. However, no Colorado case has considered what a "knowing false statement of fact" is in the context of a case like this one where the application asks an ambiguous question that the applicant is to answer to "the best of his knowledge belief." Defendants submit that since the Colorado courts have adopted the higher, legal fraud standard to justify rescission, a "knowing false statement of fact" must require no less proof than what would be required in an equitable fraud case, namely, that West Coast must prove that Mr. Butts knew that his "statement of fact" was false when he did not disclose that he heli-skied in answering Question 5. West Coast has

no such evidence because all the evidence in this case concerning Mr. Butts' belief about heli-skiing is to the contrary.

Mr. Butts believed that heli-skiing was not hazardous.  Mr. Butts believed heli-skiing was safe.  Undisputed Fact Numbers 5 and 6.  Since Mr. Butts believed that heli-skiing was not hazardous, he did not knowingly make a false statement or conceal a fact because his answer to Question 5 correctly stated his knowledge and belief   *See Hauser, supra.*; *Liebling, supra.*; *Ledley, supra*; *Ettelson, supra; Formosa, supra*; *Williams*, *supra*; *Wickman*, *supra; Lavender v. American Physician Assurance Corp.*, 2004 WL 2755878 (Ky. App. 2005).

Just as importantly, West Coast has no evidence that Mr. Butts actually knew and believed that heli-skiing was hazardous when he responded to Question 5.  West Coast did not know before or after it issued the policy whether Mr. Butts believed that heli-skiing was hazardous.  Undisputed Fact Numbers 35 and 55.  Moreover, in denying the Butts' death claim, West Coast applied the wrong standard in assessing whether Mr. Butts had knowingly made a false statement.  West Coast evaluated Mr. Butts' response to Question 5 based on an average, reasonable person, not a person similar to Mr. Butts and having his knowledge, experience, background, and skiing ability.  Undisputed Fact Numbers 41, 52, 53, and 54; **Exhibit A-19**, Rucks Deposition at 47:3-8.  West Coast did not feel that Mr. Butts' belief as to the nature of heli-skiing mattered or was relevant.   Undisputed Fact Number 52; **Exhibit A-19**, Rucks Deposition at 86:7 -87:1.

In short, since West Coast cannot prove that Mr. Butts knowingly made a false statement of fact or that Mr. Butts knew his answer to Question 5 was false at the time he made it, West Coast's claims for rescission and declaratory judgment should be dismissed.

**C.**    **West Coast is Chargeable with the Knowledge that Mr. Butts Engaged in Heli-Skiing and therefore has Waived its Misrepresentation Claims.**

The fourth prong of the *Hollinger* test requires West Coast to prove that it was "ignorant of the false statement of fact or concealment of fact <u>and is not chargeable with knowledge of the fact</u>." (emphasis added) *Hollinger* at 827.  West Coast is chargeable, as a matter of law, with the knowledge that Mr. Butts heli-skied; consequently, its constructive knowledge constitutes a waiver of its misrepresentation claims.  *Murray v. Montgomery Ward Life Ins. Co.*, 196 Colo. 225, 226, 584 P.2d 78, 79 (Colo. 1978).

When an insurer has sufficient information that would have caused a prudent person to be put on notice and inquire about the matter and when the information could have been ascertained conveniently, the insurer is chargeable with all information that a reasonable investigation would have revealed and is regarded as having knowledge of the fact.  *Major Oil Corp. v. Equitable Life Assurance Soc'y*, 457 F.2d 596, 604 (10th Cir. 1972); *Columbian Nat'l Life Ins. Co. v. Rodgers*, 116 F.2d 705, 707 (10th Cir. 1940); *Barciak v. United of Omaha Life Ins. Co.*, 777 F. Supp. 839, 843-44 (D. Colo. 1991).

West Coast knew that Mr. Butts "skied" before West Coast issued the policy.  Undisputed Fact Numbers 21-28.  There are six types of skiing activity, including heli-skiing, listed in the Swiss Re Underwriting Manual used by West Coast.  Undisputed Fact Numbers 29-31.  But Mr. Youngquist, the underwriter for the policy, had never seen the Underwriting Manual's Winter Sports Life Ratings before he approved Mr. Butts' application.  Undisputed Fact Number 33. Even though the type of skiing affects the premium charged by West Coast, Mr. Youngquist did not consult the Swiss Re Underwriting Manual before approving Mr. Butts' application. Undisputed Fact Numbers 32 - 34.  Had Mr. Youngquist consulted the Swiss Re Underwriting

Manual and then asked Mr. Butts what type of skiing he "enjoyed," West Coast would have discovered that Mr. Butts heli-skied.  However, West Coast made no attempt to determine what type of skiing Mr. Butts engaged in, despite its potential effect on the premium Mr. Butts would pay.  Undisputed Fact Number 28.  The failure of West Coast's underwriter, Mr. Youngquist, to use the Winter Sport Life Rating Section of the Swiss Re Underwriting Manual when Mr. Butts disclosed that he "skied" constitutes a waiver of West Coast's right to rescind the Policy based on the distinction between heli-skiing and five other forms of skiing activity set out under the "Skiing" heading of the Winter Sport Life Rating Section of the Swiss Re Underwriting Manual.

Under the circumstances of this case, West Coast is charged with the knowledge that Mr. Butts heli-skied; therefore, its claims for rescission and declaratory judgment should be dismissed as a matter of law.

**D.**    **West Coast Breached the Policy by Failing to Pay the Claim.**

West Coast breached the Policy when it denied Defendants' claim for benefits and asserted, without justification, that the Policy was void from its inception and rescinded solely on the ground that Mr. Butts failed to disclose that he heli-skied in responding to Question 5. Undisputed Fact Numbers 48-50**; Exhibit A- 23**, West Coast Life Denial of Claims Letter.  West Coast is chargeable with knowing that Mr. Butts heli-skied, regardless of what Mr. Butts knew and believed.  Moreover, West Coast evaluated Mr. Butts' application based on how West Coast believed an average normal person would respond to Question 5 regarding hazardous activities and hobbies.  Undisputed Fact Number 52; **Exhibit A-19**, Rucks Deposition at 43:18 - 44:2; 48:7-10; **Exhibit A-17** at 3.  West Coast did not consider what activities Mr. Butts believed were hazardous, even though the Application was completed based on Mr. Butts' best knowledge and

belief.  Undisputed Fact Numbers 52 and 54.  West Coast made no attempt to determine whether or not Mr. Butts believed heli-skiing was hazardous, and West Coast did not know Mr. Butts belief as to whether heli-skiing was hazardous at the time the Policy was issued or the claim denied.  Undisputed Fact Numbers 26-28, 35, 54, and 55.  West Coast did not consider that Mr. Butts was an expert skier and had heli-skied five or six times without incident.  Undisputed Fact Number 53.  West Coast also ignored the statement from Albert Roer that Mr. Butts did not consider heli-skiing hazardous.  Undisputed Fact Number 56.  Or, the statement from Steve Cieciuch, one of Mr. Butts' long-time friends and heli-skiing companion, that Mr. Cieciuch did not consider heli-skiing hazardous.  Undisputed Fact Numbers 57 and 58.  In sum, West Coast lacked any justification for failing to pay the claim for life insurance benefits made by Defendants.  Thus, summary judgment in favor of Defendants on their counterclaim for breach of insurance contract is proper.

## IV.    CONCLUSION

Defendants are entitled to summary judgment on West Coast's rescission and declaratory judgment claims because West Coast cannot prove, as a matter of law, three of the factors necessary for rescission.

First, Mr. Butts did not make a false statement of ***fact***.  He provided his subjective opinion based upon his truly-held knowledge and belief that heli-skiing was a recreational, non-hazardous activity. Moreover, the term "other hazardous avocation or hobby" as used in Question 5 of the Application is ambiguous and should be construed against West Coast and in favor of coverage.

1284375_1.doc                                     23

Secondly, even if the Court were to determine that Mr. Butts' answer to Question 5 is a statement fact and was not objectively true, there is no evidence that Mr. Butts **knowingly** made a false statement of fact. All of the evidence is that based on his own experience and background, Mr. Butts subjectively and truly believed that heli-skiing was not a hazardous avocation or hobby.

Thirdly, West Coast was not ignorant of the alleged false statement of fact because it is *chargeable with knowledge* that Mr. Butts heli-skied. Mr. Butts told the interviewer that West Coast hired that he "skied." If, as West Coast now claims, it was material to West Coast's underwriting decision to know which of the six types of skiing listed in its underwriting manual Mr. Butts did so that it could "properly" price the Policy, West Coast could have and should have inquired from Mr. Butts about the types of skiing he did. Having failed to do so, West Coast is charged with knowledge that Mr. Butts heli-skied.

Defendants are also entitled to summary judgment on their counterclaim for breach of insurance contract. Although the Application required Mr. Butts to answer the questions based on his knowledge and belief, West Coast disregarded this standard in denying Defendants claim. Rather, West Coast, without justification, used an objective reasonable person standard, rather than a subjective reasonable man standard that considered Mr. Butts' knowledge and belief as set out in the Application. West Coast denial of the claim was unjustified and in breach of the insurance contract. Therefore, Defendants are entitled to summary judgment on their First Claim for Relief in their Counterclaim.

WHEREFORE, Defendants, Martha Hoar, as the Personal Representative of the Estate of Stephen M. Butts, Telluride Properties, LLC, Telluride Properties, Inc., Albert D. Roer, and

Polly Lychee respectfully request that summary judgment be entered in their favor on West Coast's claims for rescission and declaratory judgment, on their counterclaim for breach of insurance contract, and for such other relief as the Court deems just and proper.

Respectfully submitted this 26th day of June, 2006.

s/ Stuart Pack
Stuart Pack
Kara Veitch
Richard D. Greengard
ATTORNEYS FOR DEFENDANTS
Isaacson Rosenbaum P.C.
633 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 292-5656
Facsimile: (303) 292-3152
E-mail:  spack@ir-law.com; kveitch@ir-law.com; rgreengard@ir-law.com

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 26th day of June, 2006, I electronically filed a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

(ljohnston@hollandhart.com)              (jramirez@hollandhart.com)
Lee F. Johnston, Esq.                    Jose A. Ramirez, Esq.
Holland & Hart LLP                       Holland & Hart LLP
555 17th Street, Suite 3200              8390 East Crescent Parkway, Suite 400
Denver, CO  80202                        Greenwood Village, CO  80111
*Attorneys for Plaintiff*                *Attorneys for Plaintiff*

s/ Jayne M. Wills

1284375_1.doc                            25