¶IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-1765-EWN-BNB

WEST COAST LIFE INSURANCE COMPANY, a Nebraska corporation,

      Plaintiff,

vs.

MARTHA HOAR, as the personal representative of THE ESTATE OF STEPHEN M. BUTTS,
TELLURIDE PROPERTIES, LLC, a Colorado limited liability company,
TELLURIDE PROPERTIES, INC., a Colorado corporation,
ALBERT D. ROER, an individual, and
POLLY LYCHEE, an individual,

      Defendants.

---

## RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Defendants, Martha Hoar, as the Personal Representative of the Estate of Stephen M.

Butts, Telluride Properties, LLC, Telluride Properties, Inc., Albert D. Roer, and Polly Lychee, by

and through their undersigned counsel, hereby file their Response to Plaintiff's Motion for

Summary Judgment and state as follows:

### I.  INTRODUCTION

On June 26, 2006, Defendants filed their Motion for Summary Judgment ("Defendants'

Motion") and Memorandum Brief in Support of Motion for Partial Summary Judgment

("Defendants' Brief").  Defendants' Motion and Brief seek entry of summary judgment in their

favor on Plaintiff West Coast Life Insurance Company's ("West Coast") claims for rescission and

declaratory judgment as well as on Defendants' counterclaim for breach of insurance contract.

Defendants did not ask this Court for summary judgment on its remaining counterclaim for bad

1295470_1.doc

faith breach of insurance contract.  Contemporaneously, West Coast filed its own motion for summary judgment and supporting memorandum brief ("West Coast's Motion" and "West Coast's Brief," respectively).  West Coast's Motion and Brief request, in effect, summary judgment its favor on all its claims as well as all of Defendants' claims.

For all the reasons set out in Defendants' Motion and Brief, both of which are hereby incorporated herein by reference, West Coast's Motion should be denied, and Defendants' Motion should be granted.  Specifically, West Coast is not entitled to summary judgment on its claim for rescission, declaratory judgment, or Defendants' counterclaim for breach of contract because West Coast cannot, as a matter of law, demonstrate each of the elements required by *Hollinger v. Mutual Benefit Life Ins. Co.*, 560 P.2d 824 (Colo. 1977).  West Coast's Motion and Brief fail to address many of the required *Hollinger* elements

Additionally, West Coast is not entitled to summary judgment on Defendants' counterclaim for bad faith breach of insurance contract.  The first element of bad faith in a first-party breach of insurance contract claim is whether the insurer acted reasonably in denying benefits under the policy.  West Coast's Brief at 26 (*citing Goodson v. American Standard Ins. Co. of Wisc.*, 89 P.3d 409, 414 (Colo. 2004)).  The second required element is that the insurer either knowingly or recklessly disregarded the validity of the insured's claim.  *Goodson,* 83 P.3d at 415.  Defendants' have endorsed three expert witnesses that opine that West Coast's conduct meets these standards and has engaged in bad faith.  Plaintiff has endorsed an opposing expert. Thus, there exist issues of fact for the jury to resolve, and West Coast is not entitled to summary judgment on Defendants' bad faith counterclaim.  *See* Fed.R.Civ.P. 56(c).

## II.  RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Defendants admit the facts in paragraph 1 of West Coast's Statement of Undisputed Material Facts ("Statement of Facts").

2.    Defendants admit the facts in paragraph 2 of the Statement of Facts.

3.    Defendants admit the facts in paragraph 3 of the Statement of Facts.

4.    Defendants admit the facts in paragraph 4 of the Statement of Facts.

5.    Defendants admit the facts in paragraph 5 of the Statement of Facts.

6.    Defendants admit the facts in paragraph 6 of the Statement of Facts.

7.    Defendants admit the facts in paragraph 7 of the Statement of Facts.

8.    Defendants admit the facts in paragraph 8 of the Statement of Facts.

9.    Defendants admit the facts in paragraph 9 of the Statement of Facts.

10.    Defendants deny that the facts in paragraph 10 of the Statement of Facts are undisputed.  West Coast relied only in part on Mr. Butts' application to issue the Policy.  West Coast also relied, in part, on the First Financial Underwriting Life Inspection Report and Mark Youngquist's unfamiliarity with the Winter Sports Life Ratings Section of the Swiss Re Underwriting Manual.  **Exhibit A-25**, attached hereto, Youngquist Deposition at 37:17 – 38:9, 54:20 – 55:13; Exhibit 14, attached to West Coast's Brief, First Financial Underwriting Life Inspection Report.

11.    Defendants admit the facts in paragraph 11 of the Statement of Facts.

12.    Defendants admit the facts in paragraph 12 of the Statement of Facts.

13.    Defendants admit the facts in paragraph 13 of the Statement of Facts.

14.    Defendants admit the facts in paragraph 14 of the Statement of Facts.

15.     Defendants admit that Mr. Rich approved an open-ended hazardous avocation question on John Hancock's life insurance application, but also state that the approval was granted for underwriting use and with the understanding that John Hancock could not rely on responses to the open-ended hazardous avocation question to deny a claim.   **Exhibit A-26**, Rich Deposition at 69:13 – 70:21.   West Coast provided no evidence that Mr. Rich approved Exhibit 7, John Hancock Life Insurance Application.

16.     Defendants admit the facts in paragraph 16 of the Statement of Facts.

17.     Defendants deny the facts in paragraph 17 of the Statement of Facts, and state that Defendants' expert witness, Robert Palter, has stated that where the insurer uses a phrase such as "any other hazardous activity" in a life insurance application, that company has seen fit to list a comprehensive list and extensive number of activities that it considers hazardous.  **Exhibit A-38**, Declaration of Robert Palter, Expert Witness Report, Exhibit 2 at 2.  Steven Hetherington, West Coast's Chief Underwriter, agreed that West Coast could have provided such a list.  **Exhibit A-27**, Hetherington Deposition at 60:16 – 61:2, 161:16-23, 163:1-6.

18.     Defendants admit the facts in paragraph 18 of the Statement of Facts.

19.     Defendants admit that the Colorado Division of Insurance ("DOI") has not objected to or requested the removal or modification of West Coast's open-ended hazardous avocation life insurance application, but also state that the DOI does not approve life insurance application questions and that it would be unprecedented for the DOI to object to or request the removal of language from a life insurance application question.  **Exhibit A-28**, Kezer Deposition at 73:15-23, 75:12-23.

20.     Defendants admit the facts in paragraph 20 of the Statement of Facts.

21.     Defendants admit the facts in paragraph 21 of the Statement of Facts.

22.     Defendants deny that Mr. Chu follows a "standard outline of questions."  Mr. Chu follows an outline of questions that he created.  **Exhibit A-29**, Chu Deposition at 23:1-14.  The questions used by Mr. Chu are not the template of standard questions provided by First Financial Underwriting Services ("First Financial").  *Id.*  Defendants deny that the entire content of the Life Inspection Report is "narrative."  *See* Exhibit 14, First Financial Underwriting Life Inspection Report at 1.  Defendants admit the remaining facts in paragraph 22 of the Statement of Facts.

23.     Defendants deny that Mr. Chu does not receive any mandates from insurers about how to conduct his life insurance inspection interviews.  Mr. Chu does not know what questions, if any, an insurance company requires his employer, First Financial, to ask.  **Exhibit A- 29**, Chu Deposition at 47:14-21.  By directing First Financial to ask specific questions, West Coast is indirectly mandating how Mr. Chu conducts his life inspection interviews.  *Id.*

24.     Defendants deny that Mr. Chu's "lifestyle" interview outline includes two sets of questions as described by West Coast.  First Financial's interview outline poses the following two questions:  (1) "Any involvement in any private aviation, scuba diving, or sky diving?"; and (2) "Any other recreational activities or exercise in your spare time?"  *See* Exhibit 13, First Financial Interview Notes at 2.

25.     Defendants admit the facts in paragraph 25 of the Statement of Facts.

26.     Defendants admit the facts in paragraph 26 of the Statement of Facts.

27.     Defendants admit the facts in paragraph 27 of the Statement of Facts.

28.    Defendants deny that Mr. Chu asked Mr. Butts additional questions about Mr. Butts' pilot license and scuba diving as described in the Statement of Facts.  With respect to flying, Mr. Chu asked Mr. Butts "when he obtained his license, how many hours he's had in command … what type of aircraft he flew … [and] the percentage of time, if he could break it down into business versus pleasure flying."  **Exhibit A-29**, Chu Deposition at 26:18 – 27:4. With respect to scuba diving, Mr. Chu asked Mr. Butts "when he obtained his certification… when his last dive was approximately and whether it was for pleasure and/or business."  *Id*. at 28:10-18.

29.    Defendants admit the facts in paragraph 29 of the Statement of Facts.

30.    Defendants admit the facts in paragraph 30 of the Statement of Facts.

31.    Defendants admit the facts in paragraph 31 of the Statement of Facts.

32.    Defendants admit the facts in paragraph 32 of the Statement of Facts.

33.    Defendants deny that Mr. Chu did not inquire further about Mr. Butts' skiing or golfing activities for the reasons listed in paragraph 33 of the Statement of Facts.  Mr. Chu did not inquire further about Mr. Butts' skiing activities because Mr. Chu "had already went through questions about hazardous activities beforehand, and when [Mr. Butts] said skiing as far as recreational activities and him being a resident of Colorado, [Mr. Chu] … assumed that it was regular downhill skiing … [in a resort]," and West Coast did not ask Mr. Chu to do a follow up interview after receiving the Life Inspection Report.  **Exhibit A- 29**, Chu Deposition at 33:20 – 34:4, 50:8-18; 59:7-14.

34.    Defendants admit the facts in paragraph 34 of the Statement of Facts.

35.    Defendants admit the facts in paragraph 35 of the Statement of Facts.

6

36.    Defendants admit the facts in paragraph 36 of the Statement of Facts.

37.    Defendants admit the facts in paragraph 37 of the Statement of Facts.

38.    Defendants admit the facts in paragraph 38 of the Statement of Facts.

39.    Defendants admit the facts in paragraph 39 of the Statement of Facts.

40.    Defendants admit the facts in paragraph 40 of the Statement of Facts.

41.    Defendants admit the facts in paragraph 41 of the Statement of Facts.

42.    Defendants deny that Mr. Chu's Life Inspection Report indicated that Mr. Butts participated in recreational and exercise-related golfing and skiing in his spare time.  The Life Inspection Report indicates that Mr. Butts participated in hazardous or extreme sports and that Mr. Butts "enjoys skiing and golfing in his spare time.  He reported no other recreational or hazardous pastimes in which he is active on a regular basis."  Exhibit 14, attached to West Coast's Motion Life Inspection Report at 1 and 3.  Defendants admit that golfing is a not a rated activity under the Swiss Re Underwriting Manual.  **Exhibit A-14,** Winter Sports Life Ratings (filed under seal).  Defendants deny that "skiing" is not rated under the Swiss Re Underwriting Manual.  *Id.*  The following types of skiing activities are listed under the heading of "Skiing" in the Swiss Re Underwriting Manual and are rated activities, *i.e.*, charged a higher premium:  heli-skiing, freestyle skiing, ski-jumping, and speed-skiing.  *Id*.  Pleasure skiing, including occasional holiday competition and advanced amateur competitive skiing, are not rated.  *Id*.

Defendants also deny that as a result of the Life Inspection Report and the Swiss Re Underwriting Manual that Mr. Youngquist did not follow-up on or otherwise recommend rating the Butts Policy on the basis of golfing or skiing.  Mr. Youngquist could not have taken the Swiss Re Underwriting Manual into consideration when deciding to rate the Butts Policy

because Mr. Youngquist did not consult the Winter Sports Life Ratings section of the Swiss Re Underwriting Manual under the heading of "Skiing" as part of his review and evaluation of Mr. Butts' application.   **Exhibit A-25**, Youngquist Deposition at 27:21-24.   Additionally, Mr. Youngquist interpreted the term "skiing" used in the Life Inspection Report to mean pleasure skiing at a ski resort. *Id.* at 57:8 – 58:11.  Mr. Youngquist did not know whether or not Mr. Butts included or excluded heli-skiing when he used the term "skiing" in his interview with Mr. Chu. *Id.* at 58:12 – 19.

43.    Defendants admit the facts in paragraph 43 of the Statement of Facts.

44.    Defendants admit the facts in paragraph 44 of the Statement of Facts.

45.    Defendants deny that Mr. Butts selected Selkirk-Tangiers Helicopter Skiing Ltd. ("Selkirk-Tangiers") as the heli-skiing operator.  Eric Giese selected Selkirk-Tangiers.  **Exhibit A-30**, Pryor Deposition at 25:9-15.

46.    Defendants admit the facts in paragraph 46 of the Statement of Facts.

47.    Defendants admit the facts in paragraph 47 of the Statement of Facts.

48.    Defendants admit the facts in paragraph 48 of the Statement of Facts.

49.    Defendants admit that after being notified of Mr. Butts' death, West Coast initiated an investigation through International Claim Specialist, Inc. ("ICS").  However, West Coast has provided no factual evidence regarding ISC's relationship with West Coast. Additionally, West Coast has provided no factual evidence of when it hired ICS in other situations.  Therefore Defendants dispute these alleged facts.

50.    Defendants admit the facts in paragraph 50 of the Statement of Facts.

51.    Defendants admit the facts in paragraph 51 of the Statement of Facts.

1295470_1.doc                                8

52.     Defendants admit that Mr. Hetherington determined that had Mr. Butts disclosed that he heli-skied, West Coast would have approved his life insurance application, but would have offered a policy at a rated, additional premium of $2.50 per thousand dollars of coverage. However, Defendants dispute that Mr. Hetherington reviewed the Swiss Re Underwriting Manual in March 2005 or thereafter to make this determination because West Coast failed to provide any factual evidence regarding the same.  **Exhibit A-27,** Hetherington Deposition at 137:14 – 138:17.

53.     Defendants admit that Marilyn Reed is West Coast's Vice President of Underwriting and that she sent an e-mail dated March 29, 2005.  Exhibit 25, e-mail dated March 29, 2005 from Marilyn Reed to Susan Heatherly.  However, Defendants deny that Ms. Reed's March 29, 2005 e-mail confirms Mr. Hetherington's underwriting opinion.  Ms. Reed's March 29, 2005 e-mail does not refer to or confirm Mr. Hetherington's underwriting opinion.  *Id.* Rather, Ms. Reed's e-mail states, "We feel that on the helicopter skiier [sic] that this claim should be contested in that a reasonable person should know that helicopters, skiing in out of bounds territory etc [sic] are hazardous.  The hazardous sports question should have been answered 'yes.'"  *Id*.  In fact, Mr. Hetherington's underwriting opinion was that "Had Mr. Butts correctly responded to application question number 5 concerning 'other hazardous avocation or hobby,' we would have followed the SWISS Re guide regarding heli skiing and offered at 'standard non-smoker' rates with a permanent flat extra of $2.50/$1000."  **Exhibit A-31**, e-mail dated March 29, 2005 from Steve Hetherington at 3.

54. Defendants admit the facts in paragraph 54 of the Statement of Facts, except that Defendants note that these events took place in June 2005. **Exhibit A-49**, International Claims Specialists Report, dated June 1, 2005, at 2.

55. Defendants admit the facts in paragraph 55 of the Statement of Facts.

56. Defendants admit the facts in paragraph 56 of the Statement of Facts, but note that the Release of Liability, Waiver of Claims, Assumption of the Risk and Indemnity Agreements signed in 2003 is incomplete. Exhibit 27 attached to West Coast's Motion.

57. Defendants admit the facts in paragraph 57 of the Statement of Facts.

58. Defendants admit the facts in paragraph 58 of the Statement of Facts

59. Defendants admit the facts in paragraph 59 of the Statement of Facts.

60. Defendants admit that West Coasts' Claim Committee voted unanimously to deny the Butts claim. Exhibit 29, Life Benefits Work Sheet at 2. However, West Coast provides no factual evidence that each member of the Claims Committee considered "the original underwriting and claims investigative files, the opinions of West Coast's Chief Underwriter and V.P. of Underwriting, and the documentation provided by Mr. Greengard on July 18th" and therefore, Defendants deny the same. The use of the term "material omission" is a legal conclusion, which Defendants dispute.

61. Defendants dispute the facts in paragraph 61 of the Statement of Facts. Mr. Rich specifically criticized the lack of any documentary support that demonstrated the Claims Committee discussed Question 5. **Exhibit A-26**, Rich Deposition at 50:21 – 51:3. Mr. Palter testified only that it was not unreasonable for West Coast to wait until obtaining all of the documents form Selkirk-Tangiers before making its decision. **Exhibit A-32**, Palter Deposition at

219:23 – 220:14.  Mr. Palter did not say he had no other criticisms of West Coast's claim process other than the timing.

62.     Defendants admit the facts in paragraph 62 of the Statement of Facts.

63.     Defendants admit the facts in paragraph 63 of the Statement of Facts for the purposes of West Coast's Motion only.

64.     Defendants admit the facts in paragraph 64 of the Statement of Facts for the purposes of West Coast's Motion only.

65.     Defendants admit the facts in paragraph 65 of the Statement of Facts for the purposes of West Coast's Motion only.

66.     Defendants admit the facts in paragraph 66 of the Statement of Facts for the purposes of West Coast's Motion only.

67.     Defendants admit the facts in paragraph 67 of the Statement of Facts.

68.     Defendants admit that it is customary for heli-skiing operators to require their guests to undergo helicopter safety and avalanche rescue and survival training and to wear specialized equipment.  However, West Coast has provided no factual evidence to support the conclusion that reason for doing this is in recognition of the inherent dangers of heli-skiing as opposed to legal liability considerations.

69.     Defendants admit the facts in paragraph 69 of the Statement of Facts.

70.     Defendants deny that during Mr. Butts' 1999 or 2000 trip with Selkirk-Tangiers, neither Mr. Butts' entire group nor Mr. Butts himself witnessed an avalanche from a distance of 10-20 yards.  **Exhibit A-30**, Pryor Deposition at 29:9-13.  Defendants deny that the avalanche was unintentionally started by the heli-skiing guide.  *Id*. at 29:24 – 30:15.

71.     Defendants admit the facts in paragraph 71 of the Statement of Facts.

72.     Defendants admit the facts in paragraph 72 of the Statement of Facts.

73.     Defendants admit the facts in paragraph 73 of the Statement of Facts.

74.     Defendants admit that Selkirk-Tangiers did not require an Avalung and that Mr. Butts purchased and wore an Avalung in 2004 and 2005.  **Exhibit A-33**, Cieciuch Deposition at 74:12-19.   Defendants admit that an Avalung provides an individual with air for several minutes if the individual is buried in an avalanche.  **Exhibit A-34**, Roer Deposition at 80:25 – 81:5.  West Coast provided no factual evidence that Mr. Butts had or wore an Avalung on any other heli-skiing trips, and therefore, Defendants deny the remaining allegations in paragraph 74 of the Statement of Facts.

75.     Defendants admit the facts in paragraph 75 of the Statement of Facts.

76.     Defendants admit the facts in paragraph 76 of the Statement of Facts.

77.     Defendants admit the facts in paragraph 77 of the Statement of Facts.

78.     Defendants admit the facts in paragraph 78 of the Statement of Facts.

79.     Defendants admit the facts in paragraph 79 of the Statement of Facts.

80.     Defendants admit the facts in paragraph 80 of the Statement of Facts.

81.     Defendants admit the facts in paragraph 81 of the Statement of Facts.

82.     Defendants admit the facts in paragraph 82 of the Statement of Facts.

83.     Defendants admit that it would have been appropriate for West Coast's underwriter, Mark Youngquist, to rely on the Swiss Re underwriting manual for rating heli-skiing and that there would be nothing unusual about a life insurance insurer relying on a reinsurance manual for underwriting risk, but there is no evidence that Mark Youngquist, West

Coast's underwriter for the Butts policy, did so.  In fact, the evidence is that Mr. Youngquist did not consult or rely on the Swiss Re manual at all in underwriting the Butts' life insurance application.  **Exhibit A-25**, Youngquist Deposition at 24:13-16, 27:1-24.

84.     Defendants admit the facts in paragraph 84 of the Statement of Facts.

85.     Defendants admit the facts in paragraph 85 of the Statement of Facts.

86.     Defendants admit the facts in paragraph 86 of the Statement of Facts.

87.     Defendants admit the facts in paragraph 87 of the Statement of Facts.

88.     Defendants admit the facts in paragraph 88 of the Statement of Facts.

### III.  STATEMENT OF ADDITIONAL DISPUTED FACTS

1.     A reasonable person with Mr. Butts' physical and mental characteristics would not understand that Question 5 called for the disclosure of heli-skiing.  To an expert skier with heli-skiing experience, heli-skiing is no different than skiing at a resort.  **Exhibit A-35**, Declaration of Vince Anderson, Expert Witness Report, Exhibit 2 at 3.

2.     Heli-skiing is not objectively hazardous.  *Id.* at 2.  ("[T]he risks involved in participating in a guided heli-skiing trip in the Selkirk Mountains of British Columbia are not unreasonably high and are no greater than that involved in skiing at a resort.")

3.     The level of a skier's experience decreases the potential for risks while heli-skiing.  *Id.* at 3.

4.     Having an experienced guide and operator decreases the risk while heli-skiing.  Id. at 3.

5.     West Coast breached its duties of good faith and fair dealing by denying the Butts claim.  **Exhibit A-36**, Declaration of John Kezer, Expert Witness Report, Exhibit 2 at 11.

6.    West Coast acted in bad faith when it denied the Butts claim.  *Id.* at 13.

7.    West Coast's denial of the Butts claim goes against public policy.  **Exhibit A-37**, Declaration of Michael Rich, Expert Witness Report, Exhibit 2 at 3.

8.    West Coast's attempts to rescind the Policy are unreasonable and do not conform to usual and customary industry standards of conduct or practices.  **Exhibit A-38**, Declaration of Robert Palter, Expert Witness Report, Exhibit 2 at 5; **Exhibit A-36**, Declaration of John Kezer, Expert Witness Report, Exhibit 2 at 11.

9.    West Coast did not have a reasonable basis for denying the Butts claim**.  Exhibit A-38**, Palter Expert Witness Report, Exhibit 2 at 5; **Exhibit A-37**, Rich Expert Witness Report, Exhibit 2 at 2.

10.    It is not reasonable or acceptable for West Coast to base a denial of a death claim on the grounds of material misrepresentation on the applicant's answer to a catch-all question asking whether the applicant engages in any "other hazardous avocation or hobby," especially where the applicant answers those questions to the best of his knowledge and belief.  **Exhibit A-37**, Declaration of Michael Rich at ¶ 4.

11.    It is unreasonable for West Coast to base and defend its decision to deny the Butts claim, in part, upon the rating for heli-skiing found in the Winter Sport Life Ratings Section of the Swiss Re Underwriting manual when the underwriter who underwrote the Butts application, Mark Youngquist, failed to use that underwriting manual in light of the information that was available through the Butts application and First Financial interview.  *Id.* at ¶ 5.

## IV.  ARGUMENT

**A.    West Coast cannot establish, as a matter of law, the elements necessary for rescission of the Policy.**

In order for West Coast to establish it is entitled to rescind the Policy, West Coast must establish each of the elements enunciated in *Hollinger*, *supra*:

> … (1) the applicant made a false statement of fact or concealed a fact in his application for insurance; (2) the applicant knowingly made the false statement or knowingly concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer; (4) the insurer was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowledge of the fact; and (5) the insurer relied, to its detriment, on its statement of fact or concealment of fact in issuing the policy.

*Hollinger* at 827.  As elaborated below, West Coast cannot establish these elements, as a matter of law, and therefore is not entitled to summary judgment.

### 1.    <u>Mr. Butts did not make a misstatement of fact or conceal a fact</u>.

West Coast's Motion fails to address the first element of *Hollinger*: "the applicant made a false statement of <u>fact</u> or concealed a <u>fact</u> in his application for insurance."  *Hollinger* at 827 (*emphasis added*).  West Coast assumes, as a matter of law, that heli-skiing is a "hazardous avocation or hobby" within the meaning of Question 5 of the Application.  West Coast even goes to some lengths to try to prove, statistically, that heli-skiing is more risky than skiing at a resort.  But, West Coast's analysis misses the mark and fails to pinpoint the real issue in this case, that is, did Mr. Butts truthfully represent his belief that heli-skiing was not a "hazardous avocation or hobby" when he did not disclose that he heli-skied in response to Question 5 of the Application.

West Coast focuses its attention on Question 5, but neglects the Declarations section of the Application.  Both are relevant to this analysis.  Question 5 asks Mr. Butts if he engaged in

"auto, motorcycle or boat racing, parachuting, skin or scuba driving, skydiving, or hang gliding or other hazardous avocation or hobby."  West Coast's Brief, Statement of Undisputed Facts at ¶ 11 (*emphasis added*).  The Application's Declarations state that by signing the Application, Mr. Butts "represent[ed] that all statements and answers made in all parts of this application are full, complete and true to the best of my knowledge and belief."  Exhibit 2 at 3 and 6 (emphasis added); West Coast's Brief, Statement of Undisputed Facts at ¶ 8.  (A more legible copy of the Application's Declaration Section is attached to Defendants' Brief as **Exhibit A-2** (filed under seal).  Question 5, when read together with the Declarations, ask Mr. Butts whether or not he believed he engaged in any other hazardous activities in addition to those listed in Question 5.  Any response to this portion of Question 5 is a statement of opinion, *i.e.*, what Mr. Butts considered hazardous, not a statement of fact and would not warrant summary judgment in West Coast's favor.  Moreover, to be entitled to summary judgment, West Coast must prove that Mr. Butts believed that heli-skiing was hazardous within the meaning of Question 5 and made a false statement of his belief to West Coast by not disclosing in the Application that he heli-skied.[1] West Coast has offered no such evidence, and in fact, the undisputed evidence in the record is to the contrary.  Butts believed heli-skiing was not hazardous and very safe.  **Exhibit A-39**, Winslow Deposition at 81:24-82:17; **Exhibit A-34**, Roer Deposition at 128:5 – 129:9.

In support of its argument, West Coast mistakenly relies on *Wade v. Olinger Life Ins. Co.*, 560 P.2d 446 (Colo. 1977).  In *Wade*, the Supreme Court established the standard for evaluating alleged misrepresentations by an applicant:  "A particular misrepresentation not only must be Actually [sic] material to the insurer's risk, as demonstrated by customary underwriting

---

[1]  As discussed, *infra* at 17-18, may also be sufficient for West Coast to prove that a reasonable person with Steve Butts' physical and mental characteristics would have known that Question 5 included heli-skiing.

procedures, it also must be such that a Reasonable [sic] person would, *under the circumstances*, have understood that the question calls for disclosure of specific information." *Wade* at 452 (emphasis added). Thus, the "trier of fact would look at the circumstances of the case … and decide if a Reasonable [sic] person would have perceived it as an item which, because of the nature of the question asked and the type of insurance, the insurer would desire to know about in assessing the risk." *Id*. at 452-53. The reasonable person must have the applicant's physical and mental characteristics, under all the circumstances. *Hollinger* at 827[2] (Erikson, J., specially concurring). Both *Wade* and *Hollinger* mandate that Mr. Butts' experience and expertise as a skier and his prior uneventful trips heli-skiing in Colorado and Canada are part of the circumstances surrounding Mr. Butts' completion of the Application. West Coast has chosen to ignore these factors as well as the undisputed evidence that Mr. Butts did not consider heli-skiing to be hazardous. Having adopted a legal standard that is contrary to Colorado law, as set out in *Wade* and *Hollinger*, West Coast is not entitled to summary judgment on its rescission and declaratory judgment claims and Defendants are so entitled.

West Coast also appears to be asking this Court to find, as a matter of law, that reasonable people without the same physical and mental characteristics as Mr. Butts would understand that heli-skiing should be disclosed in response to Question 5. But, West Coast's argument ignores Justice Erickson's admonition in his special concurrence in *Hollinger* at 381:

> However, the distinction which is necessary is that between *materiality* [that which affects the insurer's risk] and *what a question means* to a lay applicant. Materiality is to be judged by the insurer; however, the insurer is not at liberty to deny coverage, after a loss has occurred, on the basis of an answer to an insurer's

---

[2] *Wade* was announced contemporaneously with *Hollinger, supra*, and the two cases must be read together. *Wade* at 453 ("Contemporaneously with the announcement of this opinion, the elements which an insurer must prove in order to avoid an insurance policy for fraud were set out in *Hollinger*….").

> question that is ambiguous or too general to evoke a general response.  For
> example, a question that calls for the applicant to state whether he has suffered
> from a number of enumerated maladies, followed by the general catch-all phrase,
> "or other disease or ailment or surgical operation," is overly broad.  It is so broad
> as to deny an applicant the opportunity, as a reasonable person, to determine the
> scope of the question.  (*emphasis in original*)

In other words, when a "general catch-all phrase," such as "or other hazardous avocation or hobby," is used in an insurance application, a reasonable person, as a matter of law, cannot determine the scope of a question.  *Id*.  This is particularly true here where a "reasonable person with the same physical and mental characteristics" as Mr. Butts can only be someone who was an expert skier and has also heli-skied uneventfully ten to fifteen times.  **Exhibit A-39**, Winslow Deposition at 36:9 – 38:11, 81:24 – 82:17.

## 2.    Mr. Butts did not knowingly make a false statement or knowingly conceal a fact.

Contrary to West Coast's position, merely proving that Mr. Butts knew that he heli-skied is insufficient to fulfill the second element of *Hollinger*.  *Hollinger* requires that West Coast demonstrate that Mr. Butts "knowingly made the false statement or knowingly concealed the fact".  *Hollinger* at 827.  Thus, West Coast's position would only be correct if the Application asked Mr. Butts "Do you heli-ski?" and he answered "No."  West Coast's argument also ignores the language of the Application which requires Mr. Butts to complete the Application based on his "knowledge and belief."  Exhibit 2 at 3 and 6.  Question 5 asks Mr. Butts to disclose any activities or avocations he considered hazardous.  *See Id*. at 2.  West Coast would then have to prove that Mr. Butts believed that he heli-skiing was hazardous and failed to disclose that he heli-skied on the Application.  But, the record is undisputed that Mr. Butts believed that heli-

1295470_1.doc                                                    18

skiing was not hazardous.  **Exhibit A-39**, Winslow Deposition at 81:24 – 82:17; **Exhibit A-34**, Roer Deposition at 128:5 – 129:9; **Exhibit A-40**, International Claim Specialists Report dated April 29, 2005 at 4.  When Mr. Butts answered Question 5 in the negative, there is no proof that he knowingly made any misrepresentation.  Thus, the evidence is unrebutted that Mr. Butts' representation that he did not engage in a hobby or avocation he considered hazardous was a truthful and accurate representation of his knowledge and belief.

West Coast's reliance on *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948 (D. Colo. 1991), is similarly misplaced because *Golden Rule* concerned whether the applicant's subjective state of mind – whether the applicant actually appreciated the importance of a fact – is relevant to the materiality of the applicant's alleged misrepresentation.  That issue was resolved in *Wade* and is not germane to the issues here.  Additionally, the facts in *Golden Rule* are readily distinguishable from this case.  First, the application in *Golden Rule* asked the applicant objective questions such as what doctors he visited and whether he had been diagnosed with cardiovascular, neurological, gastrointestinal, or urologic disorders.  *Id*. at 951.  The Application here asked Mr. Butts an ambiguous, subjective question:  "Did he engage in any other hazardous avocation or hobby?"  West Coast's Application also asked Mr. Butts to provide his subjective opinion by declaring that his answers were "full, complete and true to the best of his knowledge and belief."  Exhibit 2 at 3 and 6.  By contrast, in *Golden Rule*, the applicant represented only that the contents of the application were "recorded to the best of my knowledge."  The applicant in *Golden Rule* acknowledged that he knew his true medical history and that the answers on the application were inaccurate.  *Golden Rule* at 951.  Thus, the applicant's answers in *Golden Rule*

were neither in response to an ambiguous question nor affirmed to the best of the applicant's belief as they are here.

As noted above, to be entitled to summary judgment, West Coast must demonstrate, among other things, that Mr. Butts believed that heli-skiing was hazardous and failed to disclose his true belief in the Application. West Coast has provided no evidence of Mr. Butts' belief regarding heli-skiing. West Coast admits that it does not know whether or not Mr. Butts believed heli-skiing was hazardous. **Exhibit A-25**, Youngquist Deposition at 92:2-6; **Exhibit A-27**, Hetherington Deposition at 152:7-18; **Exhibit A-41**, Tyson Deposition at 74:23 – 75:12; **Exhibit A-42**, Carroll Deposition 86:15 – 87:3; **Exhibit A-43**, Rucks Deposition at 43:10 – 44:2. However, the undisputed evidence in this matter is that Mr. Butts did not believe heli-skiing was hazardous, but was very safe. **Exhibit A-39**, Winslow Deposition at 81:24-82:17; **Exhibit A-34**, Roer Deposition at 128:5 – 129:9. Because Mr. Butts believed that heli-skiing was not hazardous, he did not <u>knowingly</u> make a misstatement of fact or <u>knowingly</u> conceal a fact, and West Coast's Motion must fail.

> **3.** **<u>There is no Colorado precedent which supports West Coast's assertion that the alleged non-disclosure was material to the issuance of the policy or the risk undertaken.</u>**

The third prong of the *Hollinger* test requires West Coast to prove that "the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed." *Hollinger* at 827. It is undisputed that had Mr. Butts disclosed he heli-skied in response to Question 5, West Coast would have issued the policy, but at a higher premium. **Exhibit A-25**, Youngquist Deposition at 72:23 – 73:15; **Exhibit A-27**, Hetherington Deposition at 84:4 – 84:18, 136:1 – 138:3; **Exhibit A-44**, Reed Deposition at 29:16 – 30:15. Thus, the

alleged misstatement did not materially affect the acceptance of the risk or the hazard assumed because West Coast would have issued the policy regardless of the disclosure of Mr. Butts' heli-skiing. Defendants are unaware of any Colorado precedent that holds the acceptance of the risk or the hazard assumed is materially affected when an insurance policy would have been issued but at a higher premium. This is in contrast to existing Colorado law that holds the acceptance of the risk or the hazard assumed is materially affected when an insurance company would not have issued the policy if the insurance company had known of the non-disclosed information. *Nationwide Mut. Ins. Co. v. Mrs. Condies Salad Co., Inc.*, ___ P.3d ___, 2006 WL 560955 (Colo. App. 2006) ("Materiality is established if a false or concealed fact materially affected either the risk accepted or the hazard insured against such that the insurer would not have included the coverage provision had it been truthfully informed."). Consequently, this Court should also deny West Coast's Motion because of the absence of any controlling Colorado precedent that would justify rescission where the alleged misrepresentation would only lead to the charging of a higher premium and not to the non-issuance of a policy.

### 4.    West Coast is chargeable with knowledge that Mr. Butts heli-skied.

Defendants do not dispute that West Coast was ignorant of the fact that Mr. Butts heli-skied. However, West Coast's lack of knowledge alone is not enough to satisfy the fourth element of *Hollinger*. *Hollinger* requires West Coast to also demonstrate, as a matter of law, that it "is not chargeable with knowledge" that Butts heli-skied. *Hollinger* at 827. West Coast's analysis totally neglects this "chargeable with knowledge" factor of the *Hollinger* test.

An insurer is chargeable with all knowledge that would have been revealed by a reasonable investigation when the insurer has sufficient information that would have caused a

prudent person to be put on notice and inquire about the matter, and the information could have been ascertained conveniently. *Major Oil Corp. v. Equitable Life Assurance Soc'y*, 457 F.2d 596, 604 (10th Cir. 1972); *Columbian Nat'l Life Ins. Co. v. Rodgers*, 116 F.2d 705, 707 (10th Cir. 1940); *Barciak v. United of Omaha Life Ins. Co.*, 777 F. Supp. 839, 843-44 (D. Colo. 1991). West Coast unquestionably knew before it approved the Application and issued the Policy that Mr. Butts skied. **Exhibit A-25**, Youngquist Deposition at 54:20 – 55:13; Exhibit 14, First Financial Life Inspection Report at 4. ("[Mr. Butts] also enjoys skiing and golfing in his spare time. He reported no other recreational or hazardous pastimes in which he is active with on a regular basis.") The Winter Sports Life Rating section of the Swiss Re Underwriting Manual used by West Coast suggests charging a higher premium for four of the six different classifications of skiing activities, including heli-skiing, listed in the manual. **Exhibit A-14** (filed under seal). If West Coast seeks to rely on the answer to Question 5 as a basis for denying a claim on the grounds of misrepresentation, Butts' disclosure that he skied required West Coast to conduct an investigation into the nature of Mr. Butts' skiing precisely because of the six classification of skiing in the Winter Sports Life Ratings. **Exhibit A-37**, Rich Declaration, Expert Witness Report, Exhibit 2 at 3. Nevertheless, West Coast failed to take any steps to determine the nature of Mr. Butts' skiing. **Exhibit A-25**, Youngquist Deposition at 57:25 – 58:4, 60:17-21; **Exhibit A-29**, Chu Deposition at 59:7-14.

After receiving the Life Inspection Report, West Coast could have conducted such an investigation. West Coast could have asked First Financial to follow up with Mr. Butts to determine what type of skiing Mr. Butts enjoyed. **Exhibit A-37**, Rich Declaration, Expert Witness Report, Exhibit 2 at 3; **Exhibit A-29**, Chu Deposition at 50:8-18; **Exhibit A-25**,

Youngquist Deposition at 61:13 – 62:12. West Coast failed to do this and did not ask First Financial to conduct any type of follow up interview with Mr. Butts. **Exhibit A-29**, Chu Deposition at 59:7-14. West Coast could have asked Sharon Evanson, the West Coast agent who took Mr. Butts' application, to conduct an investigation. **Exhibit A-25**, Youngquist Deposition at 61:21 – 62:3; **Exhibit A-45**, Evanson Deposition at 53:9-18. However, West Coast did not make a single inquiry into the nature or type of Mr. Butts' skiing activity. **Exhibit A-25**, Youngquist Deposition at 57:25 – 58:4, 60:17-21.

More importantly, West Coast's failure to inquire into Mr. Butts' skiing was the direct result of its underwriter's ignorance of the Swiss Re Underwriting Manual and the assumptions he made regarding about the disclosure of "skiing" contained in the Life Inspection Report. Mr. Youngquist was the underwriter responsible for approving Mr. Butts' application. **Exhibit A-25**, Youngquist Deposition at 11:7-18, 47:7 – 47:21; West Coast's Brief Statement of Undisputed Facts ¶36. Mr. Youngquist had only been employed by West Coast for less than a month when he approved Mr. Butts' application. *Id.* at 11:7-18, 23:24 – 24:1, 47:7 – 47:21; West Coast's Brief Statement of Undisputed Facts ¶36. Prior to approving Mr. Butts' application, Mr. Youngquist had never seen the Winter Sports Life Ratings section of the Swiss Re Underwriting Manual. *Id.* at 37:17 – 38:9. Mr. Youngquist assumed the term "skiing" meant pleasure skiing at a ski resort. *Id.* at 57:8 – 58:11. But when he approved the Application, Mr. Youngquist did not know whether or not Mr. Butts included or excluded heli-skiing when he used the term "skiing" in his interview with First Financial. *Id.* at 68:12-19. Mr. Youngquist did not conduct any investigation to determine what Mr. Butts meant. *Id.* at 57:25 – 58:4, 60:17-21.

Prior to issuing the Policy, Mr. Youngquist did not consult the Winter Sports Life Ratings section of the Swiss Re Underwriting Manual that sets forth ratings for the six different types of skiing. *Id.* at 37:17 – 38:9; **Exhibit A-14**, (filed under seal). In fact, Mr. Youngquist had never seen the Winter Sports Life Ratings section prior to approving Mr. Butts' application. *Id*. Because Mr. Youngquist had never seen the Winter Sports Life Ratings section and did not consult the section prior to the approval of Mr. Butts' application, Mr. Youngquist would not have known to ask Mr. Butts about the nature of his skiing. Nonetheless, West Coast is chargeable with knowledge of the contents of the Swiss Re Underwriting Manual. Youngquist's failure to recognize that West Coast classified skiing into six sub-classes and conduct any follow up investigation must be attributed to West Coast. A limited investigation, including simply asking Mr. Butts if he engaged in any of the six types of skiing listed in the Swiss Re manual, would have revealed that Mr. Butts heli-skied.

Michael Rich and Robert Palter, Defendants' experts, have opined that West Coast's underwriter should have followed up to find out what type of skiing Mr. Butts did. **Exhibit A-37**, Rich Declaration, Expert Witness Report, Exhibit 2 at 3; **Exhibit A-26**, Rich Deposition at 160:1-11; **Exhibit A-38**, Palter Exert Witness Report at 3. Given all of these circumstances, West Coast is chargeable with this knowledge. *Major Oil Corp., supra*; *Columbian Nat'l Life Ins. Co., supra*; *Barciak, supra.* Consequently, the issue of West Coast's constructive knowledge is sufficient to defeat West Coast's Motion and sustain Defendants' Motion. . *See Murray v. Montgomery Ward Life Ins. Co.*, 196 Colo. 225, 226, 584 P.2d 78, 79 (Colo. 1978).

1295470_1.doc                                          24

**5.    West Coast did not rely on the alleged non-disclosure because West Coast would have issued the Policy regardless of the alleged non-disclosure.**

Had West Coast had actual knowledge that Mr. Butts heli-skied, West Coast would have issued the Policy, but at a higher premium. West Coast's Brief Statement of Undisputed Facts at ¶ 80; **Exhibit A-25**, Youngquist Deposition at 72:23 – 73:15; **Exhibit A-27**, Hetherington Deposition at 84:4 – 84:18; **Exhibit A-44**, Reed Deposition at 29:16 – 30:22. Either way, West Coast would have insured Mr. Butts. The risk assumed by West Coast would have been the same. Therefore, West Coast did not rely on the lack of a disclosure of heli-skiing in deciding to issue the policy. And, as noted above, Defendants are unaware of any Colorado law that supports the position that a mere increase in premium charged is sufficient to demonstrate detrimental reliance. Notably, West Coast does not cite any Colorado law in support of its reliance argument.

**B.    Because West Coast cannot establish it is entitled to rescind the Policy, West Coast is not entitled to summary judgment on Defendants' breach of contract claim.**

West Coast breached the Policy when it denied the Butts claim and improperly sought to rescind the Policy based solely on the omission of information regarding heli-skiing from the Application. Exhibit-46, West Coast's Denial Letter. For all of the reasons set forth above, West Coast was not entitled to rescind the Policy.

Specifically, Mr. Butts did not knowingly make a misstatement of a fact or conceal a fact because Question 5, when read together with the Declarations, seeks a subjective response. Mr. Butts provided West Coast with his true opinion. Mr. Butts' opinion was that heli-skiing was not a hazardous avocation or hobby. Exhibit 2, Life Insurance Application. Mr. Butts answered Question 5 based on his belief that heli-skiing was not hazardous. **Exhibit A-39**, Winslow

Deposition at 81:24 – 82:17.  Additionally, West Coast is charged with the knowledge that Mr. Butts heli-skied because it failed to conduct any investigation into the nature of Mr. Butts' skiing. **Exhibit A-25**, Youngquist Deposition at 57:25 – 58:4, 61:13 – 62:12.

Finally, West Coast ignored the language of the Declarations and made its decision to deny the claims based on a purported reasonable person standard.  **Exhibit A-43**, Rucks Deposition at 43:18 – 44:2, 48:7-10.  West Coast's Claims Committee did not consider Mr. Butts' belief regarding heli-skiing.  **Exhibit A-41**, Tyson Deposition at 74:23 – 75:12; **Exhibit A-42**, Carroll Deposition at 86:15 – 87:3; **Exhibit A-43**, Rucks Deposition at 43:10 – 44:2.  Because West Coast was not entitled to rescind the Policy, it breached the Policy when it failed to pay the Butts claim.  Consequently, West Coast is not entitled to the entry of summary judgment in its favor on Defendants' breach of contract claim and Defendants are entitled on their breach of insurance contract counterclaim..

**C.    West Coast engaged in bad faith, as a matter of law, when it intentionally applied the wrong standard to evaluate Mr. Butts' alleged misrepresentation and deny the claim.**

This case involves a first-party, bad faith breach of insurance contract claim and requires Defendants to establish that:  (1) the insurer acted unreasonably under the circumstances; and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim. *Goodson* at 415.  Both of these requirements present disputed questions of fact that defeat West Coast's request for the entry of summary judgment on Defendants' counterclaim.

The standard for bad faith breach of insurance contract is not, as West Coast asserts, "Where reasonable minds can differ on coverage, there can be no bad faith."  Plaintiff's Brief at 26 (*citing Telectronics, Inc. v. United Nat'l Ins. Co.*, 796 F. Supp. 1382 (D. Colo. 1992)).  The

Court in *Telectronics* applied the same two-pronged test utilized in *Goodson*. *Id*. at 1393 (*citing Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)). However, only after the court found that no evidence of bad faith had been presented and that the insurer had acted reasonably, did the court state, *in dicta*, that "reasonable minds could differ" as to the effectiveness of the insured's notice to the claims administrator. *Id*. ("Though I have not ruled on the effectiveness of the notice to [the claims administrator], clearly it is a position upon which reasonable minds could differ.") West Coast has taken this passage out of context and improperly relied upon it. The statement does not refer to the standard for determining whether a bad faith breach of insurance contract has occurred. Defendants' bad faith breach of insurance contract claim must be evaluated by the same two-pronged test set out in *Goodson, Telectronics,* and *Travelers*.

The standard for bad faith breach of insurance contract is not "where reasonable minds can differ on coverage, there can be no bad faith" as West Coast asserts. Plaintiff's Brief at 26 (*citing Telectronics* at 1382). The court in *Telectronics* stated the same two-pronged test quoted above and did not in any way overrule this test. *Id*. at 1393 (*citing Travelers* at 1258, 1274). Only after the court stated that no evidence of bad faith was presented to the court and concluded that the insurer did not act in bad faith, did the court note, *in dicta*, that "reasonable minds could differ." *Id*. This statement refers to the effectiveness of the insured's notice to the claims administrator and was taken out of context by West Coast. *Id*. ("Though I have not ruled on the effectiveness of the notice to [the claims administrator], clearly it is a position upon which reasonable minds could differ.") The statement does not refer to the standard for determining when a bad faith breach of insurance contract occurred. *Id.* Defendants' bad faith breach of

insurance contract must be evaluated on the two-pronged test stated in *Goodson*, *Telectronics*, and *Travelers*.

### 1.    West Coast acted unreasonably in denying the Butts claim.

Defendants' experts each concluded that West Coast acted unreasonably or in bad faith in denying the Butts claim.  **Exhibit A-36,** Kezer Expert Witness Report, Exhibit 2 at 4 and 13; **Exhibit A-38**, Palter Expert Witness Report, Exhibit 2 at 5; **Exhibit A-26**, Rich Deposition at 40:15 – 41:2.  The reasonableness of an insurer's conduct is evaluated objectively based on industry standards.  *Goodson* at 415 ("The aid of expert testimony is often required in order to establish objective evidence of industry standards.").

Defendants' expert, John Kezer, opines that West Coast breached its duties of good faith and fair dealing.  **Exhibit A-36**, Kezer Expert Witness Report, Exhibit 2 at 11.  Mr. Kezer first concludes that West Coast failed to satisfy the rescission elements in *Hollinger*.  *Id*. at 8-11.  Mr. Kezer then cites a litany of actions taken by West Coast that demonstrate its bad faith:

> [West Coast] did not react to nor pursue the disclosure to First Financial that [Mr. Butts] skied.  It apparently did not provide guidance to its agents nor did not use the opportunity in the application process afforded to it to require its agents to ask more about or explain about what it believed to be 'hazardous' hobbies.  It chose to leave the interpretation of the question and definition of what it considered to be 'hazardous' to the subjective understanding of the applicant.  It has ignored the fact the applicant did not consider heli-skiing hazardous.  [West Coast] has sought to change that understanding into a false statement or intentional concealment ….

*Id.* at 12.

Robert M. Palter, another expert of Defendants, concluded that West Coast's actions were contrary to industry standards.  **Exhibit A-38**, Palter Expert Witness Report, Exhibit 2 at 5; **Exhibit A-32**, Palter Deposition at 203:11-20.  Mr. Palter points to both the use of the ambiguous catch-all phrase in Question 5 and refusal to acknowledge the knowledge and belief

statement in the Declarations to support his position. *Id*. ("[West Coast] is setting a trap and an almost insurmountable hurdle for any proposed insured. It should be obvious that by using ambiguous phrases as 'catch alls' that try to shift the burden of proof from the underwriter to the proposed insured and by not disclosing this hidden standard to the agent or the proposed insured … [West Coast's actions do] not conform to the usual and customary industry standards.") Mr. Palter also points to West Coast's failure to follow up on Mr. Butts' skiing activity as an example of how the company did not comply with industry standards. **Exhibit A-32**, Palter Deposition at 203:11-20. Moreover, according to Mr. Palter, if West Coast wanted to use the nature of Mr. Butts skiing as the sole reason for denying the claim, West Coast should have conducted a reasonable investigation into the same. *Id*.; Palter Report at 2 and 5.

**2.      West Coast knowingly and recklessly disregarded the fact that there was no reasonable basis for the claim.**

Defendants' experts have also opined that there was no reasonable basis for West Coast's denial of the Butts' claim given the language of the Application. **Exhibit A-28**, Kezer Deposition at 35:18 – 36:10; **Exhibit A-37**, Rich Expert Witness Report, Exhibit 2, Life Insurance Application at 2. Question 5 solicits a subjective answer to an ambiguous question. *Id.*; **Exhibit A-28**, Kezer Deposition at 96:16-25; **Exhibit A-26**, Rich Deposition at 102:3-9. This language alone distinguishes West Coast's Application from the case law upon which it has relied. Michael Rich has stated that it is unreasonable and contrary to industry standard to use the applicant's answers to such a question to deny a death claim on the ground of misrepresentation. **Exhibit A-37,** Rich Expert Witness Report, Exhibit 2 at 2-3.

Despite its request for a subjective answer to Question 5, West Coast unreasonably denied the Butts claim based solely on an unsubstantiated "objective" basis. There is substantial

evidence in the record to not only raise a factual issue, but even to establish, that West Coast's denial of the claim was unreasonable. For example, on March 29, 2005, Marilyn Reed, West Coast's Vice President of Underwriting, decided that the Butts claim "should be contested in that a reasonable person should know that helicopters, skiing in out of bounds territory etc [sic] are hazardous. The hazardous sports question should have been answered 'yes.'" Undisputed Fact ¶ 53; Exhibit 25 attached to West Coast's Motion; **Exhibit A-44**, Reed Deposition at 52:2-17. West Coast's Underwriting Department applied a "reasonable person" standard based on Ms. Reed's personal experience. *Id.* at 46:4-13. West Coast did not consider how many times Mr. Butts heli-skied or his level of skiing ability to be relevant. *Id.* at 37:5-11. Prior to making its decision, the Underwriting Department did not even speak with a person who was knowledgeable about heli-skiing. *Id.* at 53:3-6. Now, West Coast seeks to justify its denial by referring to the Selkirk-Tangier's waivers signed by Mr. Butts. West Coast's Brief at 27. However, West Coast did not have the waivers when the Underwriting Department gave the Claims Committee its marching orders to deny the claim. *Compare* West Coast's Brief Statement of Undisputed Facts ¶¶ 51-53 and 55.

Following the Underwriting Department's lead, West Coast's Claims Committee denied the claim on July 26, 2005. Exhibit 47, Contestable Claim Worksheet at 2; **Exhibit A-41**, Tyson Deposition at 11:6-12, 135:18 – 136:5; **Exhibit A-42**, Carroll Deposition at 47:13-19; **Exhibit A-43**, Rucks Deposition at 81:22 – 83:9. The Claims Committee, like the Underwriting Department, totally ignored Mr. Butts' knowledge and belief regarding heli-skiing because it wasn't relevant to its decision. **Exhibit A-43,** Rucks Deposition at 43:10-44:2. In determining whether to deny the claim, the Claims Committee looked at what a reasonable, average person

would consider hazardous and not what Mr. Butts considered hazardous or what a reasonable person with Mr. Butts' background, skiing expertise, and experience with heli-skiing would consider was hazardous. *Id*. at 43:18 – 44:2, 48:7-10. The Claims Committee did not consider that Mr. Butts' was an expert skier or that he had heli-skied five or six times without incident. Id. at 47:3-16. The Claims Committee also did not consider whether or not Mr. Butts believed heli-skiing was a hazardous avocation or hobby. *Id*. at 86:18 – 87:1. At the time the claim was denied, West Coast had a statement from Albert Roer and a summary of an interview with his close friend, Steve Cieciuch, both of whom stated that Mr. Butts did not consider heli-skiing hazardous. **Exhibit A-40**, International Claim Specialists Report, dated April 29, 2005, at 2-6. The Claims Committee ignored these as well. A jury should be permitted to determine if this evidence establishes both that West Coast's denial of the claim was unreasonable and that it recklessly disregarded the validity of the Butts' death claim.

West Coast's inference that Mr. Rich approved of the Underwriting Manual is misleading. West Coast's Brief at 27. Mr. Rich does not dispute that it was reasonable for West Coast to rely on the Swiss Re Underwriting Manual to make its underwriting decisions. **Exhibit A-26**, Rich Deposition at 81:10-21. What is unreasonable is for West Coast to defend its claims decision to deny the Butts' death claim by relying upon the very Swiss Re Underwriting Manual and Winter Sports Life Ratings section that West Coast failed to use in underwriting Mr. Butts' Application in light of the information that was available through the Butts application and the First Financial interview. **Exhibit A-37**, Declaration of Mike Rich at ¶ 4. In fact, Mr. Palter concluded that there was no reasonable basis for West Coast's denial of the Butts claim. **Exhibit A-38**, Palter Expert Witness Report, Exhibit 2 at 5.

West Coast's sole reason for denying the claim was Mr. Butts' failure to disclose heli-skiing in response to Question 5.  **Exhibit A-46,** West Coast Denial of Claims Letter; **Exhibit A-41**, Tyson Deposition at 152:23 – 153:10;  **Exhibit A-43**, Rucks Deposition at 84:1-12; **Exhibit A-48**, DeFoor Deposition at 130:12 – 131:20.  It is undisputed that Mr. Butts believed heli-skiing was not hazardous.  **Exhibit A-39**, Winslow Deposition at 81:24 – 82:17.  Thus, Mr. Butts correctly answered Question 5 in the negative because he did not believe that he engaged in other hazardous avocations or hobbies.  Mr. Butts' truthful answer does not provide any grounds for the denial of the Butts claim.  In light of these facts, a jury should decide if West Coast's denial of the claim was reasonable and if it acted with reckless disregard for the validity of the Butts death claim.  Therefore, West Coast should not be granted summary judgment on Defendants' claim for bad faith breach of insurance contract.

## V.  CONCLUSION

For all the reasons set out above and in Defendants' Motion and Brief, filed previously, West Coast cannot demonstrate that it is entitled to judgment as a matter of law on its rescission and declaratory judgment claims or on Defendants' counterclaims for breach of contract and bad faith breach of contract.  Therefore, West Coast's Motion should be denied.  *See* Fed.R.Civ.P. 56(c).

Respectfully submitted this 17th day of July, 2006.


      s/ Stuart Pack
Stuart Pack
Kara Veitch
Richard D. Greengard
ATTORNEYS FOR DEFENDANTS
Isaacson Rosenbaum P.C.
633 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 292-5656
Facsimile: (303) 292-3152
E-mail:  spack@ir-law.com; kveitch@ir-law.com;
rgreengard@ir-law.com


## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 17th day of July, 2006, I electronically filed a true and correct copy of the foregoing **RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

(ljohnston@hollandhart.com)           (jramirez@hollandhart.com)
Lee F. Johnston, Esq.                  Jose A. Ramirez, Esq.
Holland & Hart LLP                   Holland & Hart LLP
555 17th Street, Suite 3200          8390 East Crescent Parkway, Suite 400
Denver, CO  80202                   Greenwood Village, CO  80111
*Attorneys for Plaintiff*                *Attorneys for Plaintiff*


      s/ Jayne M. Wills

1295470_1.doc          33